# EXHIBIT D

Case 3:07-cv-05331-MMC     Document 19-5     Filed 01/03/2008     Page 1 of 16

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: AURORA DAIRY CORP.
ORGANIC MILK MARKETING AND
SALES PRACTICES LITIGATION

:
:
:
:
:
:

MDL DOCKET NO. 1907

THE *STILL* PLAINTIFFS' CONSOLIDATED RESPONSE:
(A) IN SUPPORT OF THE *MOTION OF PLAINTIFFS REBECCA
AND FERNANDO FREYRE FOR TRANSFER AND COORDINATION OR
CONSOLIDATION UNDER 28 U.S.C. § 1407*; AND
(B) IN OPPOSITION TO *PLAINTIFFS LEONIE LLOYD AND
KRISTINE MOTHERSHEAD'S CONSOLIDATED MOTION
FOR TRANSFER TO THE EASTERN DISTRICT OF MISSOURI*

**Dated:** November 13, 2007

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                          <u>PAGE(S)</u>

*In re A. H. Robins Company, Inc. "Dalkon Shield" IUD Products Liability Litigation,*
   406 F. Supp. 540 (J.P.M.L. 1975) ................................................................................6

*In re Air Crash at Little Rock, Arkansas.,*
   No. 1308, 1999 U.S. Dist. LEXIS 19202 (J.P.M.L. Dec. 14, 1999) ............................4

*In re Air Crash Disaster at Stapleton International Airport in Denver, Colorado,*
   447 F. Supp. 1071 (J.P.M.L. 1978) ......................................................................3, 4, 5

*In re Anthracite Coal Antitrust Litigation,*
   436 F. Supp. 402 (J.P.M.L. 1977) ................................................................................9

*Argonaut Partnership, L.P. v. Bankers Trustee Company Limited,*
   96 Civ. 1970 and 96 Civ. 2222, 1997 U.S. Dist. LEXIS 1092 (S.D.N.Y. Feb. 4, 1997) ..............5

*In re ConAgra Peanut Butter Products Liability Litigation,*
   495 F. Supp. 2d 1381 (J.P.M.L. 2007) ......................................................................3, 4

*In re Cygnus Telecommunications Technology LLC, Patent Litigation,*
   177 F. Supp. 2d 1375 (J.P.M.L. 2001) ..........................................................................9

*In re Elevator and Escalator Antitrust Litigation,*
   350 F. Supp. 2d 1351 (J.P.M.L. 2004) ..........................................................................5

*In re General Adjustment Bureau Antitrust Litigation,*
   375 F. Supp. 1405 (J.P.M.L. 1974) ..............................................................................3

*In re Hydrogen Peroxide Antitrust Litigation,*
   C.A. No. 05-666, MDL No. 1682, 2006 U.S. Dist. LEXIS 18790 (E.D. Pa. Apr. 11, 2006) ......8

*Innovations Enterprises Limited v. Haas-Jordan Company, Inc.,*
   99 CV 1681, 2000 U.S. Dist. LEXIS 2025 (E.D.N.Y. Jan. 4, 2000) ............................5

*In re InPhonic, Inc., Wireless Phone Rebate Litigation,*
   460 F. Supp. 2d 1380 (J.P.M.L. 2006) ......................................................................2, 4

*In re Merck & Co., Inc., Securities, Derivative & ERISA Litigation,*
   360 F. Supp. 2d 1375 (J.P.M.L. 2005) ..........................................................................3

*In re Pilgrim's Pride Fair Labor Standards Litigation,*
   489 F. Supp. 2d 1381 (J.P.M.L. 2007) ..........................................................................6

*R. Siskind & Company, Inc. v. Ashworth,*
  95 Civ. 7707, 1996 U.S. Dist. LEXIS 4418 (S.D.N.Y. Apr. 9, 1996)..........................................5

*Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.,*
  196 F. Supp. 2d 21 (D.D.C. 2002).............................................................................................5

*In re Vonage Marketing and Sales Practices Litigation,*
  505 F. Supp. 2d 1375 (J.P.M.L. 2007) ......................................................................................2

/493705

**TABLE OF CONTENTS**

I.  INTRODUCTION................................................................................................................1

II.  ARGUMENT.....................................................................................................................2

    A.   The Panel Should Grant The *Freyre* Motion
         And Transfer These Cases To The District Of Colorado.........................................................2

    B.   The *Lloyd* Movants' Request To Transfer These ...................................................7
         Actions To The Eastern District Of Missouri Should Be Denied

III.  CONCLUSION................................................................................................................10

## I. INTRODUCTION

Plaintiffs Mona Still, Helen Phillips, Eve Hana, Jeanmarie Zirger, Kim King, Noelle Fincham, Oksana Jensen, Gabriela Waschewsky, Laurelanne Davis, Debbie Millikan, Joan Scheutz, Sandie Regan, Steve Shriver, Mary Elbertai, Eileen Ptak, Cynthia Roche-Cotter, Kristen Finnegan, Amy Forsman, Joy Beckner, Naomi Mardock, Olive Knaus, Liana Hoodes, Donita Robinson, Ilene Rachford, Lisa Hopkins, Caryn Poirier, Erin Diserens, Tammy Coselli, Debra Haines, Debra Schmidt, and Hans Kueck (collectively the "*Still* Plaintiffs"), named plaintiffs in *Still v. Aurora Dairy Corporation*, No. 1:07-cv-02188-WDM (D. Colo.), respectfully submit this consolidated response memorandum supporting the *Motion of Plaintiffs Rebecca and Fernando Freyre for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407* to transfer all cases pertaining to the sale of purportedly "organic" milk by Aurora Dairy Corporation d/b/a Aurora Organic Dairy to the District of Colorado (the "*Freyre* Motion"), and opposing Plaintiffs Leonie Lloyd and Kristine Mothershead's Consolidated Motion for Transfer to the Eastern District of Missouri (the "*Lloyd* Motion").

As more fully explained below, this is a textbook example of one jurisdiction – the District of Colorado – being the overwhelmingly appropriate transfer venue for these actions. Not only is Aurora, the only defendant in this case, headquartered in the District of Colorado, and not only will the majority of witnesses and physical evidence be found in that District, but the majority of actions filed and the plaintiffs in those actions – including the *Still* Plaintiffs, who, by far, comprise the largest and most geographically comprehensive plaintiffs group in this litigation – strongly support transfer to the District of Colorado. For those reasons, the *Still* Plaintiffs respectfully submit that the Panel should grant the *Freyre* Motion. Conversely, and as explained below, the *Still* Plaintiffs further submit that the *Lloyd* Motion, suggesting the transfer

of these actions to the Eastern District of Missouri, is factually and legally misplaced and should be denied.

## II.  ARGUMENT

### A.  The Panel Should Grant The *Freyre* Motion And Transfer These Cases To The District Of Colorado

The *Freyre* Movants correctly assert the standards that the Panel uses to determine the proper transferee District for these sorts of cases, as well as the facts supporting the transfer of these cases to the District of Colorado.  In brief, all of the actions implicated in this MDL proceeding concern Aurora's allegedly wrongful conduct concerning its sale of milk or milk products which it claimed to be organic but which, in fact, were not.  Because organic milk is sold at prices higher than conventionally produced milk, Aurora was able to charge higher prices for its milk by claiming it was organic.  As a result, purchasers of Aurora's milk, including the named plaintiffs and the other members of each of the classes they seek to represent, paid premium "organic" prices, but received only conventional milk.

The *Still* Plaintiffs further agree that the Panel should transfer these actions to the District of Colorado for consolidated pretrial proceedings.  Transfer and consolidation are appropriate because these cases involve common factual questions.[1]  Moreover, transferring and

---

[1] With respect to the factual and legal questions implicated in these actions, it is inarguable that these actions are each based on virtually identical questions of law and fact, including whether Aurora sold milk or milk products which it claimed to be organic but which in fact were not, and whether Aurora's allegedly wrongful conduct violated state and federal statutory laws, as well as various states' common laws.  The Panel has frequently found common questions of fact to exist in class actions involving claims of fraud and misrepresentation.  *See, e.g., In re InPhonic, Inc., Wireless Phone Rebate Litigation*, 460 F. Supp. 2d 1380 (J.P.M.L. 2006) (centralization warranted for actions involving claims of fraud, negligent misrepresentation, unjust enrichment, and violations of state consumer protection statutes); *In re Vonage Marketing and Sales Practices Litigation*, 505 F. Supp. 2d 1375 (J.P.M.L. 2007), (centralization warranted for actions brought on behalf of nationwide and statewide classes of internet telephone company customers on allegations that internet telephone company improperly marketed its services, (continued...)

consolidating these cases will further the convenience of the parties and the witnesses will promote the just and efficient conduct of these actions, by, *inter alia*, eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification.[2]

The District of Colorado is the appropriate place for the transfer and consolidation of these actions. Not only does the District of Colorado have the resources and judicial expertise to properly conduct this case, but Aurora – the sole named defendant in these actions – is based in Boulder, Colorado and has its largest dairy operation in that state. It is thus expected that Colorado is the location of the vast majority of witnesses who will be deposed and documents that will be sought through discovery. Of Aurora's fourteen alleged statutory or regulatory

---

(...continued)

where actions rely on theories of fraud, unjust enrichment, misrepresentation, and violations of state consumer protection laws); *In re Merck & Co., Inc., Securities, Derivative & ERISA Litigation*, 360 F. Supp. 2d 1375 (J.P.M.L. 2005) (centralization warranted for actions sharing factual questions arising from allegations that Merck misrepresented or concealed the safety risks of Vioxx).

[2] Plaintiffs' counsel in all of these actions will seek documents and information from Aurora and other witnesses relating to Aurora's production, labeling, and sale of "organic" milk or milk products. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Consolidating these actions will enable a single judge to establish a uniform, coordinated, and efficient pretrial program that will minimize the inconvenience to the witnesses and expenses to the parties. Indeed, consolidating and coordinating these actions will avoid inconvenience, potential inconsistencies, and the needless waste of human and capital resources. *In re Gen. Adjustment Bureau Antitrust Litig.*, 375 F. Supp. 1405, 1407 (J.P.M.L. 1974) (consolidation and transfer warranted over objection where transfer will "prevent needless duplication of discovery which, in turn, will avoid unnecessary inconvenience to the parties and witnesses and promote just and efficient judicial administration."). These savings and increased efficiencies are precisely the types of benefits the Panel has traditionally used to justify the transfer and consolidation of actions pending in different jurisdictions. *In re ConAgra Peanut Butter Prods. Liability Litig.*, 495 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007). Moreover, the fact that Aurora is headquartered and based in the District of Colorado, further militates in favor of transferring and consolidating these actions in that District. *See, e.g., In re Air Crash Disaster at Stapleton Int'l Airport in Denver, Colo.*, 447 F. Supp. 1071, 1072 (J.P.M.L. 1978) (consolidation and transfer "[in] the District of Colorado... will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.").

violations, as identified by the United States Department of Agriculture in its Notice of Proposed Revocation, twelve of those violations involved Aurora's Colorado-based operations. *See* Exhibit A (Notice of Proposed Revocation).

Additionally, the organic certifying agency that inspected Aurora's Colorado operations is the Colorado Department of Agriculture, Division of Plant Industry, which is clearly located in the State of Colorado. Documents and witnesses from that agency will unquestionably be sought in the prosecution of these actions – a factor the Panel has consistently held is important to its transfer analysis. *See, e.g., ConAgra Peanut Butter*, 495 F. Supp. 2d at 1381 (Northern District of Georgia is appropriate transferee forum where "[l]ikely relevant documents and witnesses may be found in the district, as [well as the] manufacturing plant, where [alleged] contamination occurred and the governmental agency that investigated the contamination are located [in that district]."); *InPhonic*, 460 F.Supp.2d at 1381 (holding District of Columbia to be appropriate transferee forum because "[t]his district is where many relevant documents and witnesses are likely to be found, inasmuch as InPhonic's headquarters and related offices are located in the Washington, D.C., metropolitan area."); *In re Air Crash at Little Rock, Ark.*, Docket No. 1308, 1999 U.S. Dist. LEXIS 19202, * 3 (J.P.M.L. Dec. 14, 1999) (Panel's transfer decision based on the facts that "the accident occurred at, and the [key evidence] . . . is stored . . . within this district. . . . Accordingly, many relevant documents and witnesses will likely be found in the vicinity."); *see also In re Air Crash Disaster at Stapleton Intern. Airport*, 447 F. Supp. at 1072-73 (Panel ordered transfer of cases to the District of Colorado due to the predominant presence of "witnesses . . . and significant documentary evidence, such as tape recordings of conversations between the cockpit crew and the control tower personnel, are located in the Denver area.

Pretrial proceedings on the key common issue of liability can therefore best be supervised in the

District of Colorado.").

Additionally, the Panel often takes the preferences of the parties into consideration. *See*

*In re Elevator and Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351 (J.P.M.L. 2004). Indeed, the

vast majority of plaintiffs in these actions – including the *Still* Plaintiffs, the largest group of

plaintiffs herein – support transfer to the District of Colorado.[3]  This fact strongly militates in

favor of the requested transfer. *See Innovations Enters. Ltd. v. Haas-Jordan Co., Inc.*, C.A. No.

99 CV 1681, 2000 U.S. Dist. LEXIS 2025, at *5-6 (E.D.N.Y. Jan. 4, 2000) ("Plaintiff's choice of

forum is entitled to great weight and should not be negated unless 'the balance of convenience

and justice weighs heavily in favor of transfer... . Where transfer merely serves to shift the

inconvenience from one party to the other, the plaintiff's choice of forum should not be

disturbed'."); *R. Siskind & Co., Inc. v. Ashworth*, 95 Civ. 7707, 1996 U.S. Dist. LEXIS 4418, at

*13 (S.D.N.Y. Apr. 9, 1996) ("In making that determination, the court must give substantial

deference to [plaintiff's] choice of forum.").[4]  Moreover, and explained above, the presence of

---

[3] Of the eight actions presently implicated in this MDL proceeding, three are pending in the District of
Colorado, one is pending in the Eastern District of New York, one is pending in the Southern District of
New York, one is pending in the Northern District of California, and the other two are pending in the
Eastern District of Missouri and the Southern District of Florida, respectively.  There is also a pending
state court action against Aurora that is not presently part of this MDL proceeding *(DiSimone v. Aurora
Dairy Corp., et al.*, Case No. BC379475, Superior Court of the State of California for the County of Los
Angles).  Between these eight actions presently implicated in this MDL proceeding, there are 40 named
plaintiffs, 33 of whom -- or 82.5% -- support the District of Colorado as being the appropriate transferee
forum for these actions.

[4] *See also, e.g., Argonaut P'ship, L.P. v. Bankers Trustee Co. Ltd.*, 96 Civ. 1970 and 96 Civ. 2222, 1997
U.S. Dist. LEXIS 1092 (S.D.N.Y. Feb. 4, 1997) (traditionally deference is given to plaintiff's choice of
forum); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21 (D.D.C. 2002)
(same).

Aurora – the sole defendant in these actions – in the District of Colorado, further mandates the transfer of these actions to that District.

Moreover, MDL actions are commonly transferred to a forum where one or more cases are already pending. *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975). Thus, in addition to the majority of plaintiffs in these actions supporting transfer to the District of Colorado as the appropriate forum for these cases, the fact that more of these cases have been filed in Colorado than in any other District also militates in favor of transfer to the District of Colorado.

Further, the Panel has previously found the District of Colorado to be an appropriate venue for multidistrict litigation. According to the Panel's Statistical Analysis of Multidistrict Litigation, since 1968, the Panel has transferred thirteen cases to the District of Colorado.[5] Moreover, there are presently only two active multidistrict litigations pending in the District of Colorado,[6] thus leaving it well-suited and easily capable of handling this multidistrict action.[7]

Moreover, in selecting the most appropriate transferee forum for multidistrict litigation, this Panel may consider the number of multidistrict litigation dockets pending in the possible transferee districts. *In re Pilgrim's Pride Fair Labor Standards Litig.*, 489 F. Supp. 2d 1381 (J.P.M.L. 2007) (Fact that no other multidistrict litigation dockets were pending in the District

---

[5]*See*    http://www.jpml.uscourts.gov/Statistics/Statistical-Analysis-2006.pdf,    at    page    34,    and http://www.jpml.uscourts.gov/Statistics/TerminatedDocketsThroughSeptember2006-Updated.pdf, at page 29.

[6] *In Re: American Family Mut. Ins. Co. Overtime Pay Litigation*, MDL 1743; and *In Re: Qwest Comms. Int'l, Inc., Secs. & ERISA Litig. (No. II)*, MDL 1788.

[7] In contrast, the Eastern District of Missouri, the District to which the *Lloyd* Movants seek transfer, has four pending MDL proceedings (*In Re: Express Scripts, Inc., Pharmacy Benefits Management Litigation*, MDL 1672; *In Re: Air Crash Near Kirksville, Missouri*, on October 19, 2004, MDL 1702; *In Re: Celexa and Lexapro Prods. Liab. Litig.*, MDL 1736; and *In Re: Genetically Modified Rice Litig.*, MDL 1811).

Court of Arkansas was a factor is selecting it as the transferee forum). Here, the District of Colorado has two pending multidistrict litigation dockets and can easily and capably handle this MDL action. The small number of pending MDL actions presently pending in the District of Colorado, coupled with all of the above-referenced factors supporting transfer to that District, further strengthens the *Freyre* Plaintiffs' present motion.[8]

Finally, the Federal District courthouse in Colorado is easily accessible from throughout the United States, by air, rail, and interstate, and is served by Denver International Airport, one of the largest, busiest, best-served, and best-managed airports in the United States and a hub for United Airlines.

For all of these reasons, the *Still* Plaintiffs support the *Freyre* Motion and agree that these actions should be transferred to the District of Colorado.

**B.      The *Lloyd* Movants' Request To Transfer These
Actions To The Eastern District Of Missouri Should Be Denied**

The *Lloyd* Movants' aspirational arguments to transfer these actions to the Eastern District of Missouri are easily disposed of – since none of the arguments proffered in the *Lloyd* Motion can overcome the overwhelming number of factual and legal reasons, as explained above, to transfer these cases to the District of Colorado.[9] Indeed, the majority of the arguments the *Lloyd* Movants proffer in ostensible support of their position can be easily discarded – since

---

[8] http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-September-07.pdf.

[9] The *Still* Plaintiffs do not dispute that the Eastern District of Missouri is an excellent forum, comprised of experienced judges who are fully capable of presiding over multidistrict and other complex litigations. Indeed, counsel for the *Still* Plaintiffs are active practitioners in that District and, in fact, hold leadership positions in various class action cases pending there – including one recently transferred MDL action (*In re Genetically Modified Rice Litigation*, MDL 1811 (transferred by JPML to Judge Catherine D. Perry, of the Eastern District of Missouri, on December 19, 2006)). The facts of *this* situation, however, coupled with the quality, depth, and experience of the judges comprising the District of Colorado, mandate that these cases be transferred to that District.

they ignore the overwhelming list of reasons, set forth above, militating in favor of transferring these actions to the District of Colorado.[10]  First, the fact that the Lloyd action was first-filed, *Lloyd Mem.* at 2, 6, is irrelevant to this analysis.  This is particularly true because the *Lloyd* action was filed a mere two weeks prior to the other actions being filed and, even more significantly, because no forward progress has been made in any of these cases.  *See, e.g., In re Hydrogen Peroxide Antitrust Litig.*, C.A. No. 05-666, MDL No. 1682, 2006 U.S. Dist. LEXIS 18790, at *14 (E.D. Pa. Apr. 11, 2006) (concluding that in a priority analysis of competing actions, "[p]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").  Indeed, if this was a valid factor in the transfer analysis, it would encourage a race to the courthouse and rampant forum-shopping – two of the things that the JPML's deliberative, efficiency-based processes are designed to prevent.  Likewise, the fact that only three of the 40 named plaintiffs in these actions reside in Missouri is of no moment to this analysis.  *Lloyd Mem.* at 2.

Similarly, the *Lloyd* Movants' assertion that "[t]wo of the principal law firms involved in this litigation are based in St. Louis," *id.* at 2, 8, underscores the serious flaws in those movants' position,[11] since Gray, Ritter & Graham, P.C., one of the two St. Louis firms the *Lloyd* Movants

---

[10] Indeed, at least two of the *Lloyd* Movants' arguments – that "St. Louis is geographically central," *id.*, at 2, 5-6, that the St. Louis' airport is a major airport and "not prone to delays due to ice and snow," *id.*, are sufficiently specious as to not merit inclusion in text.  The Denver International Airport is substantially larger and better-served by national airlines than Lambert International Airport is.  Moreover, with respect to the *Lloyd* Movants' weather-based claims, the Panel need do little more than recall the November 30, 2006 JMPL proceeding in St. Louis, when the airports, the highways, and the entire city, were paralyzed by a winter ice storm.  Moreover, if centrality and ease of access were the deciding factors in MDL transfer analyses, the Northern District of Illinois would be home to every MDL proceeding.  While the *Lloyd* Movants' affection for their home city is evident and admirable, such civic-minded arguments have nothing to do with the selection of the proper transferee forum for these actions.

[11] Also interesting is the *Lloyd* Movants' argument that Colorado is an inappropriate transferee forum for these actions because "[b]ased on the filings thus far, no lead counsel is from Colorado," *id.*, at 8, thus (continued...)

refer to in ostensible support of their transfer motion, is one of the *Still* Plaintiffs' counsel – *who supports transferring these actions to the District of Colorado.*[12]

Moreover, and as explained above, the overwhelming connections of Aurora to Colorado utterly moot the *Lloyd* Movants' arguments about evidence and witnesses also potentially being located in other parts of the country. While a small number of witnesses and evidence may be found outside of Colorado – a factual reality in any litigation against a defendant corporation with nationwide sales – common sense and initial research fosters the inevitable conclusion that the primary focus of these actions is Colorado. Additionally, the fact that the average time in which the Eastern District of Missouri adjudicates or otherwise disposes of civil cases filed in that District is slightly faster than in the District of Colorado is not a useful metric to use in this analysis, since it fails to isolate and compare the disposition time of complex multidistrict or class action cases; and even if it did, the slight temporal differences between the two Districts in

---

(…continued)

seemingly intimating that one of the requirements for being selected or otherwise functioning as lead counsel in an action is residing in the District where the action is pending. While the *Still* Plaintiffs submit that that argument is both legally and factually incorrect, the *Still* Plaintiffs question whether the *Lloyd* Movants will maintain consistency and abide by their stated position on this point post-transfer.

[12] Moreover, it seems clear from the *Lloyd* Movants' argument that they chose the Eastern District of Missouri for their own convenience. That selection criterion should be disregarded, because the convenience of counsel is not relevant. *See In re Anthracite Coal Antitrust Litig.*, 436 F. Supp. 402, 403 (J.P.M.L. 1977) ("The convenience of counsel, however, is not by itself a factor to be considered under Section 1407 in the Panel's decision whether to order transfer or in the selection of a transferee forum for a group of actions. Only if the inconvenience of counsel would impinge on the convenience of the parties or witnesses would the convenience of counsel become a factor to be considered by the Panel. Such a situation is not present here."). Here, as each of the actions – including each of the actions not filed in Colorado – seeks certification of at least one nationwide class, the putative class members are spread throughout the United States., thus further rendering the convenience of counsel criterion irrelevant. Moreover, most attorneys will not be required to travel in any event. *See, e.g., In re Cygnus Telecomms. Tech. LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) ("The judicious use of liaison counsel and lead counsel will eliminate the need for most counsel ever to travel to the transferee district.").

this respect are insufficient to overcome the host of other arguments supporting transferring these actions to the District of Colorado.

Finally, the *Lloyd* Movants' assertion that Judge Shaw is a "jurist widely respected within the bar and by both plaintiffs and defendants," *id.*, is inarguable, but irrelevant, for at least two reasons. First, notwithstanding Judge Shaw's stellar credentials and experience, the judges in the District of Colorado to whom the pending Colorado actions have been assigned – Chief Judge Nottingham and Judge Miller – are respected and experienced in a manner that renders such a comparative argument moot. Moreover, because the Panel is free to assign transferred cases to any judge within a transferee District there is no assurance that, in any event, Judge Shaw would be assigned this MDL if transferred to the Eastern District of Missouri.

## III.  CONCLUSION

For all of the foregoing reasons, the *Still* Plaintiffs respectfully request that the Panel grant the *Freyre* Motion, deny the *Lloyd* Motion, and transfer these actions to the District of Colorado and consolidate them for pretrial proceedings in that District.

**Dated:**  November 13, 2007

Respectfully submitted,

Adam J. Levitt
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel:  (312) 984-0000
Fax:  (312) 984-0001
levitt@whafh.com

Don M. Downing
Thomas K. Neill
**GRAY, RITTER & GRAHAM, P.C.**

701 Market Street, Suite 800
St. Louis, Missouri 63101
Tel: (314) 241-5620
Fax: (314) 241-4140
ddowning@grgpc.com
tneill@grgpc.com

Curtis F. Gantz
David G. Cox
**LANE, ALTON & HORST LLC**
Two Miranova Place, Suite 500
Columbus, Ohio 43215-7052
Tel: 614-228-6885
Fax: 614-228-0146
cgantz@lanealton.com
dcox@lanealton.com

Gordon W. Netzorg
Peter G. Koclanes
**NETZORG MCKEEVER KOCLANES**
**& BERNHARDT LLC**
1670 Broadway, Suite 500
Denver, Colorado 80202
Tel: 303-864-1000
Fax: 303-864-1111
gnetzorg@nmkb.com
pkoclanes@nmkb.com

***Counsel for the Still Plaintiffs***

11812